869 A.2d 901

CHRISTOPHER PIERSON, M.D., PLAINTIFF–APPELLANT,
v. MEDICAL HEALTH CENTERS, P.A.; AND JOSEPH
CLEMENTE, M.D., DEFENDANTS–RESPONDENTS.

Argued December 7, 2004—Decided April 5, 2005.

*James A. Maggs* argued the cause for appellant (*Maggs & McDermott,* attorneys). *Paul H. Schneider* argued the cause for respondents (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Schneider* and *Michael A. Bruno,* of counsel; *Hana S. Wolf,* on the brief).

*Thomas M. Toman, Jr.,* argued the cause for *amicus curiae* University of Medicine and Dentistry of New Jersey (*Genova, Burns & Vernoia,* attorneys; *Angelo J. Genova,* of counsel; *Mr. Toman* and *Michelle A. Brown,* on the brief).

*Richard M. Schall* submitted a brief on behalf of *amicus curiae* National Employment Lawyers Association of New Jersey, Inc. (*Schall & Barasch,* attorneys; *Mr. Schall* and *Patricia A. Barasch,* on the brief).

Justice WALLACE delivered the opinion of the Court.

Like the companion case of *Community Hospital Group, Inc. v. More,* 183 *N.J.* 36, 869 *A.*2d 884, 2005 *WL* 767012 (2005), also decided today, this case requires us to consider whether we should continue to follow *Karlin v. Weinberg,* 77 *N.J.* 408, 390 *A.*2d 1161 (1978) (holding post-employment restrictive covenants between physicians not *per se* unreasonable and unenforceable), or instead hold that post-employment contracts involving physicians are *per se* void and unenforceable.

Medical Health Center (MHC) is a multi-specialty fifteen-member practice group located in Middleton, Monmouth County, New Jersey. Joseph Clemente, M.D. is president, director, and the majority shareholder in MHC. For purpose of clarity, MHC refers to both Dr. Clemente and MHC. Dr. Christopher Pierson is a specialist in interventional cardiology. He completed his medical training in New York and at that time had no connections to New Jersey.

MHC hired Dr. Pierson to establish a patient base and referral sources at Jersey Shore Medical Center. The parties entered into a three-year employment agreement effective July 1, 1997. The agreement would continue until June 30, 2000, unless otherwise terminated. The agreement restricted Dr. Pierson's post-MHC employment in two significant ways. First, he could not practice within a twelve-mile radius of MHC's Middleton Office for two years. Second, he no longer had the privileges of accessing, admitting, or treating patients at Riverview Medical Center located within the twelve-mile radius restriction. Other hospitals where Dr. Pierson has staff privileges, such as Jersey Shore Medical Center, Bayshore Community Hospital, and Monmouth Medical Center, were not affected. The agreement provided for

liquidated damages to be paid to MHC for any breach and contained an arbitration clause for disputes. Dr. Pierson was represented by an attorney in the negotiation of the agreement.

On December 26, 2001, the parties extended the original agreement. However, on March 22, 2002, consistent with the agreement, MHC gave Dr. Pierson ninety days notice that his employment would terminate June 30, 2002, and reminded him of the post-employment restrictions in the agreement.

Five days before his employment was scheduled to terminate, Dr. Pierson filed a complaint, alleging breach of contract, negligence, and fraud, and an order to show cause seeking temporary restraints. Dr. Pierson requested that the court declare the restrictive covenant *per se* void as against public policy on the basis that it prohibited him from treating patients at Riverview Medical Center. MHC responded with a motion to compel arbitration in accordance with the agreement and requested a temporary restraining order (TRO) to enforce the restrictive covenant.

On July 3, 2002, when the parties appeared before the trial court, they substantially changed the procedural posture of the case. MHC withdrew its request for a TRO and limited its application to its request to submit the dispute to arbitration. MHC also agreed not to seek enforcement of the post-employment covenant until any arbitration was completed, thereby eliminating Dr. Pierson's irreparable injury argument. In response, Dr. Pierson voluntarily dismissed all counts except the one challenging the enforceability of the covenant thereby eschewing any challenge to either the manner or the substance of the termination of his employment. It was his contention that there was nothing to arbitrate. Nevertheless, Dr. Pierson stipulated that if his argument that a restrictive covenant is *per se* unenforceable were arbitrated, he would not challenge the reasonableness of the covenant. The trial court rejected Dr. Pierson's attack on restrictive covenants and his motion for injunctive relief because it was bound to follow *Karlin*.

Thereafter, the matter proceeded on dual paths, one in arbitration and one in court. In July 2002, MHC filed a demand for arbitration. Dr. Pierson then appealed the trial court's decision and filed a motion to stay the arbitration proceedings pending his appeal. In response, MHC filed a motion to stay the appellate proceedings, or in the alternative, to dismiss Dr. Pierson's appeal. Both motions were denied.

In the arbitration proceeding, the arbitrator found that Dr. Pierson violated the agreement, awarded MHC $250,000 in damages and $75,000 in legal fees, plus interest, but denied MHC's request for injunctive relief. In December 2003, the court entered final judgment confirming the arbitration award, but stayed Dr. Pierson's obligation to pay the judgment pending decision by the Appellate Division. Plaintiff appealed. That appeal concerning the extent of an arbitrator's power is not before us.

In an unpublished, per curiam decision, the Appellate Division affirmed the trial court's dismissal of Dr. Pierson's complaint on the grounds that it was bound to follow *Karlin.* We granted Dr. Pierson's petition for certification on the sole basis of whether restrictive covenants involving physicians should be declared *per se* invalid. 181 *N.J.* 336, 857 *A.*2d 1282 (2004).

We decline to reverse *Karlin. See Community Hosp., supra,* 183 *N.J.* 36, 869 *A.*2d 884, 2005 *WL* 767012 (2005). We continue to adhere to the case-by-case approach for determining whether a restrictive covenant in a post-employment contract is unreasonable and unenforceable. We hold that employment contracts that contain a restrictive covenant between a physician and a hospital, although not favored, are not *per se* unreasonable and unenforceable. Rather, the trial court must determine whether the restrictive covenant protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not adverse to the public interest. For the reasons expressed in *Community Hospital,* we conclude that the *Karlin* test still provides a fair approach to accommodate the interests of the employer, the employee, and the public. Because Dr. Pierson

stipulated that the restrictive covenant was reasonable, it is not necessary to address the *Karlin* factors in the context of this case.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.